IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN TAMBURELLO,<br>　　　　Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-06153-JMG |
| | : | |
| CITY OF ALLENTOWN,<br>　　　　Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                           **August 3, 2021**

This action arises from Plaintiff John Tamburello's allegations of discrimination while he was a police officer for the Allentown Police Department (APD). On December 7, 2020, Plaintiff filed his complaint against Defendant City of Allentown, raising claims under Title VII, the Pennsylvania Human Relations Act (PHRA), and 42 U.S.C. § 1981. Presently before the Court is Defendant's motion to dismiss the hostile work environment claims and strike certain allegations from the complaint. For the following reasons, we will grant Defendant's motion to dismiss and deny its motion to strike.

**I.   ALLEGATIONS[1]**

In August 2017, Plaintiff began working as a police officer for the APD. Compl. ¶ 10, ECF No. 1. Plaintiff alleges that throughout, and even before, his employment, the APD exhibited disparate treatment toward its minority officers. *Id.* ¶¶ 16–33.

Plaintiff, who is of Hispanic and Puerto Rican heritage, was allegedly subjected to racist

---

[1]   On a motion to dismiss, we operate "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

and discriminatory comments from his colleagues. *Id.* ¶¶ 11, 73. For example, APD administrators and employees allegedly told non-white officers that they were hired only because of the color of their skin and to "fill a quota," called them "dumb as rocks," and referred to Mexicans and Puerto Ricans as "the same thing." *Id.* ¶¶ 69–70. Plaintiff further alleges that his colleagues nicknamed Puerto Ricans "Stereo" because they "always blast their music," and told non-English speakers in the community that they should "go back." *Id.* ¶ 70. These comments were "continuous, pervasive, and regular throughout [Plaintiff's] employment." *Id.* ¶ 74.

The disparate treatment also extended to the way that the APD disciplined its minority officers. Plaintiff alleges that the APD "intentionally disciplin[ed] non-white police officers . . . harsher than white police officers regardless of their conduct, on or off duty." *Id.* ¶ 72; *see also id.* ¶¶ 18–26.

Plaintiff pleads that he was on the receiving end of this differential treatment after a run-in with suspects went wrong. *Id.* ¶¶ 56–57. On February 18, 2019, Plaintiff responded to a burglary call and encountered the suspects in a vehicle. *Id.* ¶ 34. Two officers accompanied Plaintiff: Officer Ozoa, who is Hispanic, and Officer Marsteller, who is white. *Id.* As the officers approached the vehicle, the driver pulled away and hit Plaintiff. *Id.* ¶ 35. The vehicle fled the scene, and all the officers shot their firearms in its direction. *Id.* ¶¶ 36–37. One of Officer Marsteller's shots allegedly struck a suspect. *Id.* ¶ 42.

The APD investigated the incident. *Id.* ¶ 38. Plaintiff was ultimately terminated, while Officer Ozoa received a ten-day suspension without pay and Officer Marsteller received no discipline at all. *Id.* ¶¶ 40–43; *see also id.* ¶¶ 46–51. Plaintiff maintains that he "was treated differently and less favorably . . . because he is Hispanic and Puerto Rican." *Id.* ¶ 44.

Defendant now moves to strike certain allegations and partially dismiss Plaintiff's

complaint for failure to state a claim upon which relief can be granted.

**II.    STANDARD**

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008).

Third Circuit courts deploy a three-step analysis when faced with motions to dismiss. First, we identify "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675). Next, we "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, we assume the veracity of well-pleaded factual allegations, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). For purposes of this analysis, we "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

### III. DISCUSSION

#### A. Motion to Dismiss Hostile Work Environment Claims

Defendant moves to dismiss Plaintiff's hostile work environment claims under Title VII, the PHRA, and 42 U.S.C. § 1981.[2] "A hostile work environment claim under Title VII requires a showing of the following elements by the plaintiff: (1) the employee suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of responsibility on the part of the employer." *Felder v. Penn Mfg. Indus.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Id.* (quoting *Mandel*, 706 F.3d at 167).

At issue are the second, third, and fifth elements. *See* Def.'s Mot. 6, ECF No. 5-1. We will focus on the third element, as it is dispositive in this case.

The subjective component of a hostile work environment claim—that plaintiff was "detrimentally affected"—is "crucial because it demonstrates that the alleged conduct injured this particular plaintiff giving her a claim for judicial relief." *Andrews v. City of Phila.*, 895 F.2d 1469, 1483 (3d Cir. 1990). "[If the] victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 302 (W.D. Pa. 2020)

---

[2]   "The court does not distinguish between the plaintiff's Title VII and PHRA claims because 'the same standards govern each.'" *Stoud v. Susquehanna Cnty.*, 471 F. Supp. 3d 606, 616 n.6 (M.D. Pa. 2020) (quoting *McNeill v. Greyhound Lines, Inc.*, 628 F. App'x 101, 103 n.1 (3d Cir. 2015)).

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)); *see also Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994) ("[A] hostile work environment claim must involve . . . subjective . . . harm to the employee."). "While there is no requirement that an environment be psychologically injurious to a plaintiff in order to establish a hostile work environment claim, in the absence of such evidence, other factors relevant to determining whether the plaintiff actually found the environment abusive include whether the environment detract[ed] from employees' job performance, [or] discourage[d] employees from remaining on the job." *Fritz v. Uwchlan Ambulance Corps, Inc.*, No. 18-3181, 2020 WL 1042420, at *8 (E.D. Pa. Mar. 4, 2020) (internal quotation marks and citation omitted).

Here, Plaintiff claims that the APD's "racist and discriminatory comments and actions negatively impacted [his] ability to effectively do his job." Compl. ¶ 75. We agree with Defendant: these are "conclusory allegations without the requisite factual support." Def.'s Mot. 8. "Plaintiff has not alleged that these comments interfered with [his] work performance in any specific way, other than [his] conclusory allegation that the hostile work environment detrimentally affected [him] and would detrimentally affect a reasonable person in the same position as Plaintiff." *Clem v. Case Pork Roll Co.*, No. 15-6809, 2016 WL 3912021, at *6 (D.N.J. July 18, 2016) (internal quotation marks omitted); *see also* Compl. ¶ 76 ("These same racist and discriminatory comments and actions would detrimentally affect a reasonable person in the same position as Plaintiff Tamburello."). Plaintiff's "bald assertions" do not satisfy the pleading requirement for the third element of a hostile work environment claim, so it must be dismissed.[3]

---

[3] Plaintiff's hostile work environment claim under 42 U.S.C. § 1981 must be dismissed for the same reason. "In general, a § 1981 claim for hostile work environment must satisfy the same elements as a hostile work environment claim under Title VII." *White v. City of Phila.*, No. 11-4197, 2012 WL 28074, at *4 (E.D. Pa. Jan. 5, 2012) (citing *Griffin v. Harrisburg Prop. Servs., Inc.*, 421 F. App'x 204, 207 n.3 (3d Cir. 2011)). Those elements are: "(1) the employee suffered

5

*See Fekete v. Nat'l R.R. Passenger Corp.*, No. 11-6570, 2011 WL 5572626, at *1 (E.D. Pa. Nov. 16, 2011) ("A court need not credit 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997))).

We are sensitive that "[c]ourts have been hesitant to dismiss hostile work environment claims under Rule 12(b)(6) because the proof of this claim is highly fact-specific." *Garrett v. U.S. Dep't of Veterans Affs.*, No. 05-1164, 2007 WL 1875535, at *7 (D.N.J. June 28, 2007) (citations omitted). But absent nonconclusory allegations concerning a subjective, detrimental effect on Plaintiff, we cannot let these claims proceed. Nevertheless, Plaintiff will be given leave to amend because it is plausible that he could state a hostile work environment claim.[4]

**B.     Motion to Strike**

Defendant also asks that we strike certain allegations from the complaint. Courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). For purposes of Rule 12(f), "immaterial matter" is "that which has no essential or important relationship to [any] claim[s] for relief," while "scandalous matter is that which casts a derogatory light on someone, uses repulsive language, or detracts from

---

intentional discrimination because of their [membership in a protected class]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [protected class] in that position; and (5) the existence of respondeat superior liability." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

[4]     Count IV of the complaint—the Section 1981 claim—is based on *both* race discrimination and hostile work environment. *See* Compl. ¶ 82; *see also* Pl.'s Opp'n 10, ECF No. 6. "Claims of discrimination . . . and hostile work environment are different and require Plaintiff to prove different elements. Any other conclusion would render claims for a hostile work environment superfluous." *Williams v. Mercy Health Sys.*, 866 F. Supp. 2d 490, 501 n.9 (E.D. Pa. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002)); *cf. Davis v. Matagorda Cnty.*, No. 3:18-cv-00188, 2019 WL 1015341, at *3 n.6 (S.D. Tex. Mar. 4, 2019) ("[R]ace discrimination and hostile work environment are two separate claims, with different elements."). Defendant does not address race discrimination under Section 1981, so that claim survives.

the dignity of the court." *Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 204 (M.D. Pa. Dec. 21, 2020) (internal quotation marks and citations omitted). "[S]triking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (internal quotation marks and citation omitted); *see also Chan v. Barbour, Inc.*, 263 F. Supp. 3d 521, 524 (E.D. Pa. 2017) ("[S]uch motions are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." (internal quotation marks and citation omitted)).

Defendant argues that eighteen paragraphs of the complaint are immaterial, impertinent, and scandalous. *See* Def.'s Mot. 10–12; *see also* Compl. ¶¶ 16–33. We disagree. First, the allegations—all of which deal with the APD's alleged history of disparate treatment toward its minority officers—do not rise to the level of "cruelly derogatory" language that should be stricken as scandalous. *See, e.g.*, *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 649 (E.D. Pa. 2014) (striking description of defendants as "lying and corrupt police officers" who were "motivated by their greed . . . and racist desires" because it cast them "in a cruelly derogatory light" (internal quotation marks omitted)); *Collura v. City of Phila.*, No. 2:12-cv-4398, 2012 WL 6645532, at *7 (E.D. Pa. Dec. 21, 2012) ("The word scandalous generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language . . . ." (internal quotation marks and citation omitted)).

Second, the allegations bear a reasonable relation to Plaintiff's claims and so cannot be considered impertinent or immaterial. Paragraphs 27–33, for example, all describe racially insensitive comments allegedly made by white police officers in the APD during Plaintiff's

7

employment. Likewise, paragraphs 16–26 of the complaint describe the APD's alleged "history of disciplining its minority police officers differently than its white police officers." Compl. ¶ 16. These allegations pertain to Plaintiff's racial discrimination claims and will not be stricken. *See Lawson v. City of Coatesville*, No. 12-6100, 2013 WL 4596129, at *6 (E.D. Pa. Aug. 29, 2013) (refusing to strike allegations of "racially insensitive and offensive comments made by white police officers" because they "relate to Plaintiff's *Monell* claim"); *Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 685 (E.D. Pa. 2018) ("The discriminatory intent necessary for a valid section 1981 claim can manifest in . . . a history of discriminatory conduct . . . ." (internal quotation marks and citation omitted.")); *cf. Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) (reversing dismissal of Section 1981 racial discrimination claim where plaintiffs were allegedly "the targets of racial epithets, and they were fired . . . due to their race").

### IV.   CONCLUSION

For the foregoing reasons, Defendant's motion is granted in part and denied in part. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge